Hon. A. M. BUCHANAN,
Hon. T. T. LAND,
Hon. A. VOORHIES,
Hon. A. DUFFEL.

} *Associate Justices.*

---

### J. MURPHY & WIFE *v.* B. REDLER.

Damages cannot be awarded against the landlord for suing out a provisional seizure of the effects of the tenant, where the seizure has been maintained as legal.

To recover damages for a malicious prosecution, the plaintiff must show that the prosecution was instituted maliciously and without probable cause, and both these must concur.

APPEAL from the Fifth District Court of New Orleans, *Eggleston, J.* *W. H. Hunt & Dénegre* and *T. H. Kennedy,* for plaintiff. *D. Augustin,* for defendant and appellant.

BUCHANAN, J. Plaintiffs claim of defendant five thousand dollars damages for two malicious prosecutions; one civil and the other criminal; the former being a suit and provisional seizure for house rent, and the latter an accusation of arson.

The damages are claimed generally for the two prosecutions, without distinguishing how much is claimed for each.

The suit for house rent which is complained of terminated by a judgment of the Justice of the Peace in favor of the plaintiff *(Redler)* against the defendants *(Mrs. Murphy* and husband), with privilege and costs, rendered on the 31st of January, 1859. From this judgment defendants appealed on the 4th of February, 1859; and on the 11th February, 1859, said appeal being still undecided, the present action was brought. Since the institution of this action, the said appeal has been tried in the appellate District Court, and judgment rendered affirming the judgment of the Justice of the Peace. These facts of record dispose of that portion of this case which is based upon the defendant's suit against plaintiffs for house rent. It is clear that no damages can be awarded for a provisional seizure which has been maintained by the judgment of the court from which it issued; and, *a fortiori,* when that judgment has been affirmed by the appellate court.

MURPHY
v.
REDLER.

As to the criminal prosecution of plaintiffs for arson, it is not alleged that defendant was the prosecutor—that he made the affidavit for the arrest of the plaintiffs on that charge; but that the defendant prompted, instigated and advised, by false information furnished to, the person who made the affidavit upon which plaintiffs were arrested and imprisoned. The petition charges that the statements thus made to the said prosecutor and to other persons by defendant were false, slanderous and malicious, and were well known by said *Redler* to be so; and that said *Redler* uttered and published the same with a view to the arrest and imprisonment of petitioners. The petition further alleges that plaintiffs were arrested and imprisoned for five days upon the charge of setting fire to their store, preferred against them on the oath of the sergeant of police; at the end of which time they were examined on said charge by the Recorder of the Second District of New Orleans, and were discharged from the same; said charge proving to be wholly unfounded.

From the evidence on trial it appears that plaintiffs occupied the ground floor of a two-story house, No. 264 Chartres Street, as a millinery and dry-goods shop, which they rented from defendant; that about six o'clock in the evening of the 16th January, 1859, the plaintiffs were absent from the premises and the store shut up, when the neighbors discovered smoke issuing from the crevices of the apartment; and an alarm of fire being given, and the store being broken open, was found to be on fire. The fire was among the goods on the shelves, and was extinguished in a short time, with very little damage to the building, but great damage to the goods; the stock and fixtures, which were insured for two thousand dollars, being sold subsequently at auction for $450.

The next day after the fire, *G. A. Raymond*, a police officer who had been on the spot during the fire, made an affidavit before the Recorder of the Second District "that from information received, he has good reason to believe, and verily believes, that *Mr.* and *Mrs. Murphy* have on last night, about six o'clock, set fire to their house on Chartres street, between Ursulines and Hospital streets, whereupon deponent charges the above named accused with having wilfully and maliciously committed the crime of arson, and prays that they may be arrested and dealt with according to law."

This charge was dismissed on the 21st January, four days after the date of the affidavit, as "*not substantiated,*" as appears from the Recorder's endorsement on the affidavit.

The first witness examined for plaintiffs on the trial of the cause, was *Raymond*, the police officer who made the affidavit aforesaid. This witness testifies that he made the charge against *Murphy* and wife upon information derived from *Redler;* that he met *Redler* at the fire, who told him he thought *Murphy* set fire to the house; that *Murphy* was largely in debt to himself *(Redler)* and others; that he was about to sue *Murphy* for rent, and had told *Murphy* of his intention to sue him, &c. That *Raymond* was not induced solely by the representations of defendant to prosecute plaintiffs appears, however, pretty clear from the rest of his testimony. He says that he "spoke to other persons about the fire besides defendant *Redler*, and it was the general impression of persons there that plaintiffs *Murphy* had set the house on fire." "Witness found a table close to a shelf; found also a chair without a bottom to it, which bottom

had been burnt out; the fire had originated in the upper part of the shelf." "Witness saw many suspicious circumstances about the place, and the general impression there was; that there were suspicious circumstances attending this fire." "*Murphy* told witness that when the fire originated he was on Washington Square, in the Third district, and that he had been informed of the fire by a friend of his."

The suspicious circumstances attending this fire are also spoken of by other witnesses, examined for defendant.

*Youenes*, the fire inspector of the insurance offices, testifies that he examined the premises, and is convinced that the house was set on fire designedly.

*Madam Jacob*, a neighbor who lived next door, proves that *Murphy* had left the store about an hour before the fire broke out. His children had gone out with the servant half an hour before. When the fire broke out, the store was closed; after the fire witness went into the store and saw that the paper and the shelves were burned; she saw the table with the candlestick and also the chair which had been burnt through by the candle.

*Gustave Probst* lived two doors from the house occupied by plaintiffs—heard a noise of persons crying fire—he ran out, and when the door was opened, saw a little table with a candle on it near the shelves which were burning.

*Joseph David* ran to the fire when the alarm was given—went into the store, and saw that the fire was in some band-boxes and shelves in a corner of the house, found it strange that the fire had originated as it did in a corner and on shelves several feet from the ceiling. "Some said the fire had been set purposely." "*Redler* appeared much grieved at the occurrence, and said the fire would ruin him."

The Judge of the District Court charged the jury as follows:

"That if the jury find that the suit and provisional seizure complained of are dependent of a suit which is not at an end and still pending, they cannot give damages against defendant. 2 Greenleaf, 452; 11 An. 333.

"That if the jury find that the defendant spoke the words complained of upon reasonable suspicions, and to give the party over to a judicial inquiry, and to prefer a complaint before a magistrate, being in good faith in the fair and honest prosecution of his rights, and the protection of his interest, then the defendant cannot be condemned in damages. Vol. 2 Harrison's Digest, p. 2389 to 2396.

"That the plaintiff must not only prove malice, but must also show there was no probable cause for the prosecution, and that the defendant is not bound to prove probable cause until the plaintiff has shown the absence of it; and that if plaintiff show malice and not the want of probable cause, defendant cannot be condemned, as it is just as necessary to show the want of probable cause, as it is malice, before a recovery can be had.

"That to maintain an action for this injury the plaintiff must prove:

"1st. That he has been prosecuted by the defendant, either criminally or in a civil suit, and that the prosecution is at an end.

"2d. That it was instituted maliciously and without probable cause.

"3d. That he thereby sustained damage. 2 Greenleaf, §449.

"That probable cause does not depend upon *the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting.* 12 An. 333.

MURPHY
v.
REDLER.

"The plaintiff must show that the prosecution was instituted malicious-ly and without probable cause, and both these must concur.

"That to maintain such an action, malice and want of probable cause must not only be alleged, but proved. 13 An., pp. 214, 274."

This charge expounds the law of the case correctly, and is not objected to by either party.

Consistently with these principles, we think it was the duty of the jury, with the evidence before them, to have found a verdict for defendant. Admitting that his advice to the police officer to prosecute, was synonimous with a prosecution by himself, the circumstances of the case, as disclosed in this testimany, constituted, while unexplained, a probable cause for the prosecution complained of. And it is fortunate for plaintiffs that they were able to explain them before the Recorder, as we presume they must have done.

It is, therefore, adjudged and decreed, that the judgment of the District Court upon the verdict of the jury be reversed, and that there be judgment for defendant, with costs in both courts.